UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **Veal** | **Docket no. 6:19-cv-00524** |
| **Versus** | **Judge Michael J Juneau** |
| **Primerica Life Insurance Co, et al** | **Magistrate Judge Carol B Whitehurst** |

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is a Motion To Remand filed by Plaintiff, Alonda Jenkins Veal (sometimes referred to as "Mrs. Veal") [Rec. Doc. 9] and Defendants, Primerica Life Insurance Company ("Primerica Life") and Melissa Doucet's ("Doucet")[1], Opposition thereto [Rec. Doc. 12]. For the reasons that follow, the undersign recommends that the Motion be denied.

## BACKGROUND

This suit concerns a life insurance claim made by Plaintiff following the death of her husband, Delanzo Veal ("Mr. Veal"). Primerica Life issued an individual

---

[1] In their briefs, the parties refer, without explanation, to Melissa Doucet as "Melissa Doucet Jackson" or "Jackson." *R. 9, 12*. Because the Docket Sheet of this case as well as the Complaint For Damages identifies "Melissa Doucet" as the defendant, in order to avoid confusion the Court will continue to refer to defendant Melissa Doucet as "Doucet."

term life insurance policy to Mr. and Mrs. Veal, Policy No. 0490713664 ("the Policy"). *R. 12, Exh. 1*. In the Application dated June 2, 2017 (the "Application"), Mrs. Veal was designated as the Policy owner and primary insured. *Id., Exh. 2*. Mr. Veal was insured under the Policy's Spouse Term Insurance Rider in the amount of $150,000 for which Mrs. Veal was the primary beneficiary. *Id.* Both Mr. and Mrs. Veal sought Non/Tobacco/Non-Nicotine class life insurance coverage from Primerica Life. *R. 12, Exh.1, p.2 § 6*.

In the Application, Mr. and Mrs. Veal acknowledged that all of the information in the Application was true and complete to the best of their knowledge and belief, that they were lawful spouses, that their statements and answers in the Application and any other evidence of insurability were the basis for and became a part of the Policy, and that no information about them would be considered to have been given unless it was stated in the Application. *Id. at p. 5*.

In the Application Agreement, Mr. and Mrs. Veal affirmed that, "By signing this Application....(4) Upon delivery [of the Policy], either by paper or electronically, we will review it to confirm that Our responses are true and complete." *Id. at p. 5*. Mr. and Mrs. Veal further affirmed, "(5) Prior to accepting

any issued coverage, We will also review all policy and disclosure documents in the policy kit, including the sales illustration or policy summary." *Id.*

The Application Agreement also provides that Mr. and Mrs. Veal agreed and acknowledged that Primerica Life relied on the information they provided in the Application to determine whether and on what terms to issue a Policy. *Id.* They agreed that their acceptance of the Policy would be considered their confirmation of the accuracy of their Application information. *Id.* In the event they determined that any information in the Application was false, incorrect, or incomplete, Mr. and Mrs. Veal agreed to "immediately inform" the agent or Primerica Life. *Id.* Finally, Mr. and Mrs. Veal acknowledged and agreed that if any person insured under the Policy died within two years from the issue date of any coverage on that person, (a) [Primerica Life] may contest such coverage under the Policy, and (b) such coverage may be rendered void if [Primerica Life] determines that any information in the Application related to such coverage was false, incomplete or incorrect." *Id.* at p.5.

Mr. and Mrs. Veal affirmed that they understood and agreed that, "In the sale or service of Primerica Insurance, Primerica agents represent Primerica Life Insurance Company and may provide services to [them] for Primerica Life." *Id.* at p. 8. They also affirmed that they understood and agreed that, "Primerica [Life]

Agents do not have the authority to accept risk, pass on insurability, or make void, waive or change any condition or provision of the Application, policy, or receipt." *Id.* Further, the Application Agreement clearly stated, in bold-face type: "**The approval of insurance for the proposed insured(s) is based on the representations made regarding the use of tobacco or nicotine, responses to medical questions and other application information. False representations will result in a denial of coverage in a claims investigation and may be considered insurance fraud.**" *Id.* (*emphasis in original*).

Mr. and Mrs. Veal further acknowledged in the three-page Application Signature Record that they were both "applying for a Non-Tobacco class of term life policy" and understood that their "answers about tobacco or nicotine use responses to medical questions and other application information [would] determine [their] eligibility and the premium for the insurance coverage." *Id.* They agreed that "False representations will result in a denial of coverage in a claims investigation and may be considered insurance fraud." *Id.*

Mr. Veal died on June 24, 2018. Because his death occurred during the two-year Contestability Period set forth in the Policy, a routine and customary investigation was initiated. During the course of that investigation, medical records

were collected which revealed that Mr. Veal had a history of tobacco use which was not disclosed on the Application. *Id., Exh. 3, October 25, 2018 Denial Letter*. In its Denial Letter, Primerica Life indicated that, had this information been provided during the application process, the requested coverage for Mr. Veal would not have been approved. *Id.* Based on the material misrepresentations contained in the Application, Primerica Life rescinded the Spouse Rider to the Policy, deemed it null and void and returned all premiums paid for the Spouse Rider. *Id.*

Plaintiff filed this case on March 20, 2019 in the Twenty-seventh Judicial District Court, Parish of St. Landry, Louisiana, against Primerica Life and Doucet ("Defendants"). Defendants filed a Notice of Removal on April 24, 2019, alleging that the Court has diversity jurisdiction under 28 U.S.C. § 1332. The record reveals that Primerica Life is a foreign insurer, under Tennessee law. Doucet, however, is a citizen of Louisiana. Defendants assert that Doucet was named for the sole purpose of destroying diversity jurisdiction, and therefore was improperly joined. They contend her citizenship should be disregarded.

## IMPROPER JOINER STANDARD

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship. Those statutes have been interpreted by the

courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff. Improper joinder[2] is an exception to the complete diversity rule. When a party is improperly joined, its citizenship is not considered in the complete diversity calculation. *See Kemp v. CTL Distribution, Inc.*, 440 F. App'x 240, 248 (5th Cir.2011); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 313 (5th Cir.2005). When a removing party alleges jurisdiction on the basis that non-diverse parties have been improperly joined, the removing party must bear the burden of proving improper joinder. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

In the Fifth Circuit, there are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Only the second way is at issue in this case. The second test asks whether the defendant has demonstrated there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the in-state defendant. *Smallwood v. Illinois Central Railroad*

---

[2] In *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d at 571 n. 1, the Fifth Circuit adopted the term "improper joinder" as a substitute for the term "fraudulent joinder" which was used previously, stating that "[a]lthough there is no substantive difference between the two terms, 'improper joinder' is preferred."

*Co.,* 385 F.3d 568, 573 (5th Cir.2004) (*en banc*); *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003). A determination of improper joinder must be based on an analysis of the causes of action alleged in the petition at the time of removal. *Lassberg v. Bank of Am., N.A.*, 660 F. App'x 262, 266 (5th Cir. 2016).

A non-diverse defendant is improperly joined if the removing defendant establishes that (1) the plaintiff has stated a claim against a defendant that he fraudulently alleges is non-diverse, or (2) the plaintiff has not stated a claim against a defendant that he properly alleges is non-diverse. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016). The parties do not contest that Doucet is a Louisiana citizen; therefore, the issue at hand is whether Plaintiff has stated a claim against her.

To prove there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the non-diverse defendant, the court in most instances will conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. *Id*. The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may

7

"pierce the pleadings" and consider summary judgment type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Ross v. Citifinancial, Inc.* 344 F.3d 458, 461 (5th Cir. 2003), *citing Travis v. Irby,* 326 F.3d 644, 648-49(5th Cir. 2003). If a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. *See id*. In undertaking the improper-joinder analysis, federal courts must apply federal, not state, pleading standards. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*., 818 F.3d 193, 208 (5th Cir. 2016).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully."

8

*Iqbal*, 556 U.S. at 678. A court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing Iqbal, 556 U.S. at 678).

## ANALYSIS

In her motion to remand, Plaintiff argues that the removing defendants have failed to satisfy their burden of demonstrating "either fraud in the recitation of jurisdictional facts or the absence of any possibility that Mrs. Veal has stated a claim against Defendants." She contends that the face of her Complaint for Damages demonstrates that Doucet "is the agent who wrote the Policy and she is the one that the death was reported to .... [and that Doucet] failed to fulfill her obligation under the Policy." *R. 9-1, pp. 1-2*. Plaintiff provides no factual or jurisprudential support in the Memorandum supporting her Motion. *R. 9-1*.

Plaintiff's Complaint for Damages confirms that the only allegations as to Doucet are that: (1) "[Plaintiff] promptly reported the death [of Mr. Veal] to

9

Doucet...."; (2) "the policy [was] written by Doucet"[3]; and, (3) "Doucet [and Primerica Life] failed to fulfill its obligations under the policy of insurance [by]....(a) Failing to pay for all damages due under the policy; (b) Committing negligent claims handling, adjusting, and/or potentially committing intentional misrepresentations to avoid payment; (c) Failing to properly handle and adjust this insurance claim; (d) Breach of contract; (e) Intentional and Negligent infliction of emotional distress; (f) Arbitrary and capricious claim handling, subjecting defendant to penalties, attorney's fees, and general and special damages pursuant to LSA R.S. Arts. 22:1973 (formerly 22:1220) and 22:1892 (formerly 22:658)." *R. 1-2, ¶¶ 9, 10 at p. 3.* Paragraph 11, requesting damages, does so only against Primerica and does not include Doucet. *Id. at ¶ 11.* Plaintiff's Complaint, however, has absolutely no factual support related to these alleged claims. As to her allegations related to Plaintiff reporting Mr. Veal's death to Doucet, or Doucet "writing" the Policy, the Complaint contains no additional factual allegations. Even construing the allegation of Doucet writing the Policy as one for assisting the Veals in submitting their Application to

---

[3] The Complaint is equivocal as to whether it states that the Policy was "written" by Doucet or "provided by Primerica." *R. 1-2, ¶9.*

Primerica, the allegations in the Complaint are nothing more than bare bones' accusations that are devoid of factual support.

In Louisiana, "an insurance agent owes a duty of 'reasonable diligence' to his customer." *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 42 So. 3d 352, 356 (La. 2010). "This duty of 'reasonable diligence' is fulfilled when the agent procures the insurance requested." *Id*. A plaintiff has a valid claim against the insurance agent when she demonstrates that the agent (1) agreed to procure the insurance, (2) failed to use reasonable diligence in attempting to procure it, (3) failed to notify the plaintiff promptly that it did not obtain insurance and (4) acted in such a way that the plaintiff could assume she was insured. *Id*. at 356-57. It is the insured's responsibility to request the type of insurance coverage, and the amount of coverage needed." *Id*. at 359. The agent is not "obligat[ed] to spontaneously or affirmatively identify the scope or the amount of insurance coverage the client needs." *Id*. Also, "it is [the] insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *Id*.

Here, there is no allegation that either Mr. or Mrs. Veal requested that Doucet procure the insurance for them but that she failed to do so. Nor is there any allegation

11

that Doucet requested the wrong type of insurance policy on behalf of the Veals. More significantly, there is no allegation that Mr. or Mrs. Veal informed Doucet of Mr. Veal's relevant history of smoking and that she failed to accurately note that history in the Application. The issue in this case is not with the procurement of the Policy—the Policy was procured. The issue is with Primerica Life's contention that there was a material misrepresentation made in the Application which resulted in the rescission of the Spouse Rider— that Mr. Veal had a history of tobacco use which was not disclosed on the Application. In fact, Plaintiff alleges in her Complaint that "[a]t no time prior to or during the application interview for this life insurance policy was [Plaintiff] or her late husband, [Mr. Veal] a smoker." *R. 1-2, ¶ 8.*

Based on the foregoing, there are no allegations that Doucet did anything wrong in this case. The Complaint is devoid of any allegations or facts establishing that Doucet breached a duty owed to Mr. or Mrs. Veal. There is no viable cause of action against Doucet under Louisiana law as alleged in the Complaint. *See Thomas v. Taylor*, 2007 WL 128840, *2 (E.D. La. 2007). A finding of improper joinder is tantamount to dismissal of the defendant who was improperly joined. *See, e.g., Ayala v. Gabriel Bldg.* Supply, 2012 WL 1579496 (E.D. La. May 4, 2012) (finding

12

improper joinder, denying motion to remand, and dismissing improperly joined defendant without prejudice). As such, Allstate has shown that Doucet was improperly joined and her citizenship should not be considered for the purposes of removal. As there is complete diversity between Plaintiff and Primerica Life, and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has original jurisdiction under the provisions of 28 U.S.C. §1332.

## CONCLUSION

As Defendants have met their burden of establishing that Doucet was improperly joined, the undersigned recommends that Plaintiff's Motion To Remand [Rec. Doc. 9] be **DENIED**. It is further recommended that all claims against Doucet, the non-diverse defendant, be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Signed at Lafayette, Louisiana, on this 9th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE